## UNITED STATES FIDELITY & GUARANTY CO. v. ROBERSON.

### No. 4150.

Court of Appeal of Louisiana. Second Circuit, Second Division.

June 11, 1932.

Herndon & Herndon and Charles M. Roberson, all of Shreveport, for appellant.

Pugh, Grimmet & Boatner, F. Simon, and Sam Robertson, all of Shreveport, for appellee.

TALIAFERRO, J.

In the year 1926 Bashie Fullwood was appointed administratrix of the succession of her deceased brother Stephens Fullwood by the district court of Bossier parish. Defendant acted as her attorney. The deceased was an ex-service man. The only asset of his succession was $7,274.34 due by the United States for war risk insurance, which was collected and deposited by the administratrix in a bank in the city of Shreveport on May 26, 1927. The plaintiff herein signed the administratrix' bond as surety, requiring a joint control agreement whereby the funds of the succession could only be withdrawn from bank on checks of the administratrix, countersigned by its Shreveport agency. The account of the administratrix in said bank was closed on June 7, 1927, as during the short period of its existence, only 12 days, the entire fund was withdrawn by checks of the administratrix, approved by plaintiff, without sanction of the court, and without any account whatever being filed.

The deceased, Stephens Fullwood, left no forced heirs, but did leave two sisters, viz. the administratrix and Lucretia Wallace, and the issue of two predeceased sisters, as his sole heirs. One of the checks issued by the administratrix was in favor of Lucretia Wallace for $875 which she indorsed and collected. It was intended to cover her interest in the succession as one of the four heirs, but was in reality about half enough as will be seen hereinafter.

No account having been filed by the administratrix, on March 29, 1928, Lucretia Wallace sued out a rule to compel her to do so, or show cause to the contrary. Answering this rule, inter alia, the administratrix avers that the defendant herein handled all matters for her pertaining to this succession; that he has, or should have, in his possession or under his control, all papers, documents, vouchers, canceled checks, etc., concerning the affairs of the succession; that she had called on him to deliver such papers, etc., to her, and he had failed to do so, and she is unable to file her account without same; that, according to her calculation, several hundred dollars of the money collected by defendant for the succession's account remains undistributed and unaccounted for; that she is ready and willing to comply with the court's orders when the desired papers are surrendered to her by defendant. She prayed for and secured a rule on defendant to show cause why he should not deliver to her the papers, documents, etc., above mentioned. This rule issued on May 30, 1928, and was returnable June 13th. No service could be made on defendant, due to his absence from Shreveport, and the rule was refixed for June 19th, but for lack of service, it was again refixed for October 22d; again

for November 12th; again for November 26th, and finally for January 14th. Service was made on January 9th, and the rule was answered on January 14th. Defendant attached to his answer some receipts, canceled checks, and other papers having reference to the succession, which he avers are all he has in his possession or under his control. Before this answer was filed, however, the administratrix filed a provisional account whereon, as disbursements, among others, were listed $875 paid Lucretia Wallace as "heir's portion"; $1,200 paid Rebecca Roach, as "fee"; $700 paid defendant, Chas. M. Roberson, as attorney's fee; and $168.09 paid Geo. J. Rushing, "account." Lucretia Wallace opposed this account in many particulars, and, after trial, the district court found that only $800 had been paid to the opponent on account of her heir's interest; and reduced the fee of defendant to $250; rejected and disallowed the item of $1,200 paid to Rebecca Roach, and that of $168.09 paid to Geo. J. Rushing. The account was recast by the court, and a net balance of $6,804.35 was found, after deducting legitimate charges, being $1,701.08 for each heir. The opponent was given judgment against the succession and the administratrix for $901.08, with interest. No appeal was prosecuted from this decree. Execution issued on the judgment and was returned unsatisfied. The surety company, plaintiff, then purchased the judgment from Lucretia Wallace.

Plaintiff brings this suit against Chas. M. Roberson to recover the amount thus paid to Lucretia Wallace. To disclose plaintiff's position clearly we find it necessary to make somewhat extended reference to the allegations of its petition. After detailing the history of the succession to the time of deposit of the $7,274.34 in bank, it is alleged:

That on May 26, 1927, defendant presented a check of $2,804.74 of the administratrix to plaintiff for its approval, informing plaintiff that the money was being withdrawn under order of court for the proper purposes of the administration, and "that in pursuance to the customary procedure and in reliance upon the said Charles M. Roberson as an attorney at law of Shreveport, Louisiana, and as attorney for the administratrix and the said succession, and as an officer of the court, your petitioner signed said check for the purpose of complying with said purported court order and to enable the said Charles M. Roberson to pay said debt."

That said defendant in like manner and with like representations and assurances presented other checks for signature, which finally absorbed all of said account, and in like manner, relying upon the said Roberson, as aforesaid, the checks were approved by petitioner.

That as a matter of fact no tableau of debts or distribution, nor provisional account, had

been filed, and no order of court authorizing the withdrawal of said funds had been granted, and, while petitioner was ignorant of these facts, the defendant was not, but nevertheless made said statements in order to withdraw the funds from bank and joint control of petitioner so as to control the payments and distribution thereof as he saw fit. That due to the deception practiced on petitioner by defendant, and to that alone, said checks were approved by it.

That Bashie Fullwood is an old, ignorant, uneducated, and easily duped negro woman, and had not the ability nor understanding to act as administratrix, and her attorney (defendant herein) actually handled the succession business, collected the assets, and made the distribution of its funds. That all payments were made by him or under his direction, without court orders or authority. That the administratrix was merely the agency through whom he acted, and she relied implicitly upon his advice as to what debts should be paid from the succession funds.

That defendant has refused to account for the amounts of succession money withdrawn by him or coming into his hands, and petitioner is informed and believes that the total thereof is in excess of $1,000, which has not been applied by him to the payment of succession obligations, but retained by him, or paid to strangers to the succession for purposes of defendant only.

That petitioner, having paid the sum of $957.35 under its bond, is subrogated to all the rights of the administratrix and of the succession to that extent and entitled to recover said sum from defendant.

That, in the alternative, as an attorney at law and an officer of the court, said Charles M. Roberson impliedly contracted with petitioner on applying for bond for the administratrix of the succession that he would use skill and diligence in carrying out the functions of his office and in conducting the administration of the estate and by reason of his breach thereof he is indebted unto petitioner to the extent of its loss on that account.

Defendant filed answer on September 15, 1930. He admits the facts pertaining to the history of said succession to the time of deposit of the fund in the Shreveport bank, but denies specifically that he was employed by the administratrix to pay debts due by the estate and to make distribution of its assets, and denies that he had anything to do with the withdrawing of said funds from bank. He avers that the check for $2,804.74 was drawn by the administratrix, and he accompanied her to the bank to identify her, and notified plaintiff that he had been informed by her that said amount was being withdrawn to pay succession expenses. He denies that he ever presented any check to plaintiff and informed it that the check was drawn under

authority of the court, but only imparted to plaintiff, with regard to each check presented, what the administratrix told him with respect to the purpose of the withdrawal. He avers that in each instance he presented receipts to plaintiff from the parties the administratrix claimed to be paying money; that the administratrix drew her own checks, and was always accompanied by relatives or friends who directed her affairs. He denies that he made any distribution of the funds, or directed how such should be done, and specially denies that he practiced any deceit or fraud on plaintiff; and finally he avers that he repeatedly tried to get the administratrix to furnish him with a list of debts paid by her from the succession funds that he might file a provisional account and tableau of distribution.

The lower court gave plaintiff judgment for the amount sued for, and defendant has appealed.

In oral argument and in brief defendant urges us to remand the case so that he could have opportunity to introduce evidence in support of his defense to the serious charges made by plaintiff against him. He asserts that the case was taken up for trial and tried without prior fixing and without notice to him, at a time when he was absent from the city of Shreveport, and that thereby he has been done a grave injustice. and denied the privilege of being heard in defense of his rights.

Answer was filed by defendant September 15, 1930. No action was taken in the case thereafter until on May 22, 1931, on motion of plaintiff's counsel, it was taken up for trial and tried. The record does not show that the case was previously fixed for trial. Ordinarily, a case that has been at issue for 8 months should not be allowed brought to trial without notice to all parties concerned. Appellant has not advised us in brief or oral argument that the court below violated any rule in allowing the case tried. We have no right to assume that the trial was irregular. What evidence there is in the record on the subject negatives any such inference.

In the recent case of Silvie v. International Order, etc., 140 So. 97, 98, wherein defendant in the case at bar was attorney for defendant, the facts are identical with those of the present case. We there said: "We do not know what rules the trial court in this instance has adopted for fixing and trying cases. Appellant has not pointed out wherein the court has failed to observe its rules in proceeding as it did. In the absence of such showing, it will be presumed that the case was proceeded with regularly in accordance with its rules. The minutes show that the case was regularly taken up for trial, and the judgment recites that same came on regularly for trial."

Since this case was argued and submitted for decision, defendant died. John W. Flournoy has qualified as administrator of the succession in the district court of Caddo parish. He has been made a party to the suit.

We are unable now to see wherein remanding of the case to the lower court for another trial would accomplish any good purpose or improve upon the record as presently made up. Defendant cannot now be heard to give evidence in his own behalf. It is improbable that any other person is in a position to give like testimony about the matters at issue herein which so vitally concerned defendant. The administrator has not asked us to remand the case.

In his answer defendant states that his employment in the succession of Stephens Fullwood terminated with collection of the amount due it by the United States Veterans' Bureau. In contradiction of this allegation, in the same answer, he avers that he endeavored to induce Bashie Fullwood, administratrix, to give him a list of the debts of the succession so he could prepare her final account; and when he answered the rule to produce any papers he had in his possession concerning the affairs of this succession he attached every check the administratrix had drawn against her bank account, the bank statement mailed her, in his care, after the account was closed, and several' receipts, etc., which, in fact, constituted practically all the papers in the succession, save court records. Conspicuous for their absence, among these papers there is no bill or receipt from defendant for the $700 fee paid him nor for the $1,200 paid Rebecca Roach, his secretary.

He avers that he "presented in each instance (when checks were tendered plaintiff's agents for approval) receipts from the parties that the administratrix claimed to be paying the money to, and so advised plaintiff of what was told him regarding said check." The first check of $2,804,70, as stated before, was drawn and cashed on May 27th, the day following deposit of the government check in bank. This check was in favor of the administratrix. It is inconceivable that the administratrix had a receipt from any one at this time to deliver to defendant to be presented to plaintiff's agents. The fact is that besides the fee due defendant and one or two other small debts, the succession did not owe any one. The heirs were paid by checks issued to them. The fact that defendant's fee of $700 and that of Rebecca Roach were both paid in cash from this check of $2,804.70 is significant and forms the basis for the suspicion that defendant was so manipulating the matter, so far as concerned him, as to leave little or no tracks. In further contradiction of the averments of his answer, supra, he also says that, when the administratrix withdrew the last $2,111.90 from the bank, she informed him she

was moving to Minden and would deposit the amount in a bank there. No receipts could have been presented in this instance to plaintiff's agents, and certainly they would not have approved this check, if they had been informed that the money would be withdrawn and deposited in a bank without knowledge of the joint control agreement.

When the opposition to the final account of the administratrix was tried in the district court of Bossier parish, defendant did not appear to defend the payment of the fee to him from the succession funds; nor did he defend payment of the fee to Rebecca Roach. He had knowledge of that litigation. His fee was reduced $450, and, so far as we are advised, no refund of that amount has been made to the succession. The fee of Rebecca Roach was disallowed in toto, and no refund of the amount, in whole or part, has been made.

■ The evidence in the case and all of the circumstances, and inferences arising therefrom, point unerringly to defendant as being the directing influence and guiding agency of Bashie Fullwood, who is shown to be an old, ignorant woman, totally incompetent to be administratrix of this succession. She testified, and we have no doubt of its truthfulness, that the entire succession fund was distributed in the manner he dictated. He admits that he accompanied her to the bank to withdraw $2,804.70, May 27, 1927, and to withdraw $2,111.90 on June 7th, 12 days later, when the account was balanced. The withdrawing of so large amounts in currency, ostensibly to pay debts of or claims against the succession, in itself arouses suspicion.

In view of the unusual character of this case we have decided to incorporate in this opinion portions of the evidence given by Bashie Fullwood, and of Mr. Glenn N. Walker, member of plaintiff's Shreveport agency, on trial of the case.

Bashie Fullwood testified as follows:

"Q. Whom did you employ to open the succession, to represent the succession or represent you, what lawyer? A. Charlie Roberson.

"Q. Charlie Roberson? A. Yes, sir.

"Q. Is he a colored lawyer in Shreveport? A. Yes, sir.

"Q. How did you happen to go to him, Bashie? A. Well this woman I told you about.

"Q. What woman? A. The Roach woman.

"Q. The Roach woman? A. She brought me.

"Q. Bash did you sign some checks on the bank to get money out of it? A. I reckon I did, lawyer. I don't know, to tell you the truth.

"By the Court: Q. You did whatever the lawyer told you? A. That is just what I did, yes, sir.

"By Mr. Robertson: Q. Did you tell him what to do or did he tell you what to do? A. He told me what to do because I didn't know.

"Q. You did not know anything about it? A. I didn't know anything.

"Q. Do you remember the amounts of any checks that you signed as administratrix, do you remember how much they were? A. For the children?

"Q. No, do you remember how much they were for? A. No, sir, I don't know.

"Q. Well did you at any time tell Charlie Roberson what debts to pay or what to do about drawing this money out,—at any time? Did you tell him what to do about it or did he tell you? A. Well the day that the money come I told him I owed some debts out of the money. My brother owed some debts and I wanted to pay them.

"Q. I see. Now, Bash, how many times did you go to the bank with Charlie Roberson? A. I went there twice.

"Q. Twice? A. Yes, sir.

"By the Court: Q. What money did you get when you went there? A. I went there to pay the children.

"Q. You went once to pay the children theirs? A. Yes, sir.

"By Mr. Robertson: Q. What was the other time that you went, Bash? A. The last time I went back is what you ask me about? I drawed Two Thousand something, so he said it was, because I couldn't count. I don't know, sir, how much it was.

"By the Court: Q. Well what did you do with that? A. I put it in the bank, my part of it.

"Q. How much was your part of it? A. One Thousand ($1,000.00) Dollars and something.

"By Mr. Robertson: Q. Who told you that, Bash? A. Charlie Roberson.

"Q. Who told you how to divide that money up? A. He told me how to divide it up for me because I didn't know how.

"Q. He told you how to divide it up? A. Yes, sir, he sho' did.

"Q. How did he do it, just put it in different piles or how? A. Yes, sir.

"Q. Did he just count it out in different piles and say this pile is for so-and-so and this pile is for so-and-so? A. Yes, sir.

"Q. How about paying this Roach woman, Bash? How much was she paid, do you know? A. Twelve Hundred ($1200.00) Dollars, they said.

"Q. What was that for, Bash? A. I guess for bringin' me over here to him and writin' some letters in Washington for me.

"By the Court: Q. And washing for you? A. In Washington for me.

"By Mr. Robertson: Q. Bash had you

promised to pay her a special amount to do that? A. I sho' did not.

"Q. Who told you how much to pay her? A. Charlie Roberson.

"Q. Did you want to pay her any such amount of money? A. No, sir, I didn't. I thought it was too much.

"By the Court: Q. How much? A. Twelve Hundred ($1200.00) Dollars.

"Q. Did you also pay Charlie Roberson something? A. Seven Hundred.

"Q. Seven Hundred ($700.00) Dollars for Charlie Roberson and Twelve Hundred ($1200.00) Dollars for whom? Who was it? A. Roach.

"By Mr. Robertson: Some woman named Roach, Your Honor.

"By the Court: Man?

"By Mr. Robertson: A woman.

"By the Court: Q. A woman? A. Yes, sir.

"By Mr. Robertson: Q. Would you have paid that money to that Roach woman if Charlie Roberson had not told you to do it? A. No, sir, I wouldn't. I wouldn't have paid her that much.

"Q. Do you remember going down to the office of the people who made bond for you as administratrix? A. Did I go down there?

"Q. Yes? A. No, sir, I didn't go down there.

"Q. Did you ever go down there? A. No, sir.

"Q. Who went down there? A. Charlie Roberson.

"Q. Charlie Roberson went down there? A. You are talking about the 'bonus'?

"Q. Yes? A. Charlie Roberson.

"Q. When you went to Charlie's office and signed checks, what did you do? Did you make out the checks or just sign your name or scratch or what did you do? A. I signed. I couldn't make out the check.

"Q. You could not make out a check? A. No, sir.

"Q. You can sign your name? A. Yes, sir, I can kind of scratch my name.

"Q. The checks were already made out? A. Yes, sir."

Mr. Walker testified as follows:

"Q. Did you or someone in behalf of the United States Fidelity & Guaranty Company countersign a check signed by Bashie Fullwood, Administratrix, to the order of Bashie Fullwood, on the American National Bank in the amount of Twenty-Eight Hundred Four Dollars and Seventy-four Cents ($2,804.74)? A. Yes. My recollection is that particular check was signed by Thomas H. Hearn, our secretary-treasurer. I was present and so was Mr. Ford, president of our company, when it was signed. My recollection is that Mr. Hearn signed that particular check.

"Q. At whose instance was the check counter-signed? A. Charlie Roberson's.

"Q. What, if any, representations were made to you by him at the time this check was counter-signed? A. That he had a court order.

"Q. That he had a court order? A. It was to cover certain expenses, debts, part for Bashie Fullwood, her portion, and he represented that he had a court order. We possibly were a little careless in not examining it but it is our custom and is the custom of representatives of other companies that where we have joint control and the lawyer represents to you that he is handling the case and has a court order we accept his word. And it was done in this case.

"Q. Yes, sir. Well now did you inquire specifically as to whether or not the court order issued for withdrawal of these funds? Was a representation made to you there? A. I asked the question. We always do. I was present. I think that Mr. Hearn signed the check and I asked the question. I asked if he had a court order and he said he did, had a copy in his file.

"Q. Did he have his file with him at the time? A. He had a folder with him.

"Q. Did he make any gesture toward that file as though he had a copy of the court order therein? A. I don't remember that but he said that he had a copy in his file.

"By the Court: Q. You took his word for it? A. I took his word for it.

"By Mr. Robertson: Q. Would you have counter-signed that check or would that check have been counter-signed by you if that representation had not been made? A. No.

"Q. Were there any other checks countersigned by you and drawn by Bashie Fullwood on funds deposited in the American National Bank? A. Yes, sir.

"Q. At whose instance were those checks signed? A. Charlie Roberson's.

"Q. Charlie Roberson's? A. The checks were brought to our office made out and signed. Made out by Charlie Roberson and signed by Bashie Fullwood. Brought to us for our counter signature.

"Q. Did you or not inquire upon those occasions as to whether or not a court order had issued or proceedings were in order for disbursement of those funds? A. We did.

"Q. What, if any, representations did Charlie Roberson make? A. He said that he had court orders for it.

"Q. Now did you or did you not have occasion to discuss with Charlie Roberson the relation that he held to the succession proceedings as regards himself and Bashie Fullwood? A. Well about the only discussion we had, Charlie made the statement that Bashie was just a negro woman, that she didn't know

what it was all about—or words to that effect—and that he was having to handle the entire matter for her. Which is a fact."

This testimony was taken down by the official court reporter and forms part of the record before us.

■ We feel that this evidence fully establishes plaintiff's case. Without the misrepresentations and deceit practiced by defendant on plaintiff's agency, these checks would not have been countersigned. Acting upon defendant's representations that the funds were being withdrawn under and pursuant to court orders, plaintiff's agent made it possible that the funds be withdrawn illegally, and, to considerable extent, misappropriated. Defendant's conduct caused plaintiff to incur liability as surety which would not have been incurred but for the abuse of the confidence reposed in him as an attorney at law and officer of the court. The measure of this liability is the amount plaintiff has been forced to pay on account of its obligation as surety.

For the reasons herein assigned, the judgment appealed from is affirmed.